1

2

3

4                                    UNITED STATES DISTRICT COURT

5                                  NORTHERN DISTRICT OF CALIFORNIA

6

7    ALLEN WILLIAMS,                                  Case No.  15-cv-04783-YGR

              Petitioner,

8

         v.                                           ORDER DENYING PETITION FOR HABEAS
9                                                     CORPUS RELIEF

10   JOHN SOTO,

              Respondent.

11

12           Now before the Court is petitioner Allen Williams's amended petition for a writ of habeas

13   corpus.  (Dkt. No. 26.)  The government answered (Dkt. No. 27) and petitioner filed a traverse in

14   reply (Dkt. No. 28).  Petitioner raises two grounds for relief.  First, petitioner asserts that the trial

15   court violated his constitutional right to present a full defense under *Chambers v. Mississippi* when

16   it rejected admission of exculpatory evidence.  Second, petitioner claims that his counsel rendered

17   ineffective assistance.  Specifically, with respect to his ineffective assistance of counsel claims,

18   petitioner claims that his counsel failed to:  (i) obtain admission of certain exculpatory hearsay

19   statements; (ii) move to suppress police testimony and photographs of blood inside the house

20   obtained through a warrantless search; and (iii) object to admission of certain hearsay statements

21   to the paramedic and 911 operator under the Confrontation Clause.

22           Based thereon, petitioner seeks a writ of habeas corpus.  Having carefully considered the

23   petition and the papers submitted, and for the reasons stated below, the petition for such relief is

24   DENIED.

25   I.      BACKGROUND

26           On February 4, 2013, a San Mateo County jury found petitioner Allen Williams guilty of

27   "infliction of corporal injury" on his spouse ("Jane Doe") and of "assault by means of force likely

28   to cause great bodily injury."  *People v. Williams*, No. A-138275, 2014 WL 1465884, at *1 (Cal.

United States District Court
Northern District of California

Ct. App. Apr. 15, 2014), *review denied* July 23, 2014.  The trial court additionally found true numerous enhancement allegations, and sentenced petitioner to a prison term of thirty-nine years to life.  *Id*. at *2.  On April 15, 2014, the California Court of Appeal affirmed the judgment of the trial court.  *Id*. at *1.  In addressing the petitioner's claims on appeal, the California Court of Appeal summarized the relevant facts as follows:

> On May 6, 2013, defendant's wife called 9-1-l for help.  She told dispatchers she had just been attacked by her husband and was hiding in her neighbor's backyard.  This information was relayed to Officer David Manion who was dispatched to their home in the City of San Mateo.

> On his arrival, the door to the house was open but Manion at first saw no one.  He then observed defendant on the porch and when defendant started to enter the home, Manion stopped and handcuffed him.  Defendant told the officer, "I was going to turn myself in" and "I was wrong, I admit it."  Manion noticed defendant was bleeding from a cut on the back of his head.  Defendant told Manion that his wife had hit him with a cane.  Manion searched inside the home and observed blood on the wall, baseboard, carpet, and comforter of the master bedroom.  Outside the home, in a garbage can located on the sidewalk, he found a bloodied wooden cane, a pillow, and a man's undershirt.

> When defendant's wife approached, with a swollen face and in apparent pain, she was rushed to the emergency room for medical attention.  On the way to the hospital, she told the paramedic that her husband hit her with a closed fist multiple times.  She had a broken jaw, missing teeth, oral lacerations, multiple fractured ribs, and bruising around her eye, chest, and arm.

> Defendant proffered testimony, which was excluded, that a few days after being discharged from the hospital, the wife spoke with her friend, Anne Savage, and told her "I don't like what I did, I put my husband in jail" and that she "started it."

*Id.* at *1.  On July 23, 2014, the California Supreme Court denied review of the Court of Appeal decision regarding petitioner's *Chambers* due process violation and ineffective assistance of counsel ("IAC") claims.  *People v. Williams*, No. S-218741 (Cal. July 23, 2014).

## II.   LEGAL STANDARD

A federal court can entertain a petition for a writ of habeas corpus on behalf of a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death

Penalty Act ("AEDPA") of 1996, section 2254(d)(1), a state prisoner can obtain habeas relief regarding a claim adjudicated in state court only if the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding."  28 U.S.C. § 2254(a).

A state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  A state court decision is considered an "unreasonable application" of clearly established federal law, as determined by the Supreme Court, if it correctly identifies a governing legal principle from a Supreme Court decision but "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  A federal court reviewing a habeas petition cannot issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.  Rather, a federal court may grant the writ only if they find the state court decision was contrary to or an unreasonable application of a clearly established federal law. *Id*. at 412–13.  The Supreme Court has ruled that the petitioner has the burden of showing that a state court decision is an objectively unreasonable application of clearly established federal law. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Harrington v. Richter*, 562 U.S. 86, 98, 101–03 (2011).

AEDPA requires a highly deferential standard for evaluating state court rulings and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *see also Lindh v. Murphy*, 521 U.S. 320, 334 n.7 (1997).  "[A] habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 562 U.S. at 102.  A federal court should only grant relief due to a

United States District Court
Northern District of California

3

1    constitutional error of the state court when the error was not harmless, that is, only if it had a

2    "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

3    *Abrahamson*, 507 U.S. 619, 623, 638 (1993).

4         When there is no reasoned opinion from the highest state court considering the petitioner's

5    claims, the federal court reviewing the habeas petition should consult the last state court to render

6    a decision on the claims to determine whether or not a clearly established law of the Supreme

7    Court was unreasonably applied. *Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991). The last

8    reasoned state court decision in this case is the California Court of Appeal's unpublished

9    disposition issued on April 15, 2014.

10    **III.**    ***CHAMBERS* CLAIM**

11        A.    **Legal Framework**

12         The constitutional right of an accused to due process in a criminal trial guarantees

13    defendants "the right to a fair opportunity to defend against the State's accusations." *Chambers v.*

14    *Mississippi*, 410 U.S. 284, 294 (1973). This right encompasses the "rights to confront and cross-

15    examine witnesses and to call witnesses in one's own behalf." *Id.*; *see also Washington v. Texas*,

16    388 U.S. 14, 19 (1967). Specifically, *Chambers* held that the exclusion of reliable, defense-

17    critical evidence through the mechanistic application of evidentiary rules undermines the

18    defendant's right to present a defense and violates due process. *Chambers*, 410 U.S. at 302; *see*

19    *also United States v. Evans*, 728 F.3d 953, 966 (9th Cir. 2013) (stating that the Ninth Circuit has

20    found violations of the constitutional right to present a defense where the trial court incorrectly

21    excluded evidence that was necessary for the defendant to refute a critical element of the

22    prosecution's case) (internal citation omitted); *Cudjo v. Ayers*, 698 F.3d 752, 754 (9th Cir. 2012)

23    (stating that *Chambers* clearly established that the "exclusion of trustworthy and necessary

24    exculpatory testimony at trial violates a defendant's due process right to present a defense").

25         The Supreme Court's holding in *Chambers* should be interpreted narrowly, as it "does not

26    stand for the proposition that the defendant is denied a fair opportunity to defend himself

27    whenever a state or federal rule excludes favorable evidence." *United States v. Scheffer*, 523 U.S.

28    303, 316 (1998). The *Chambers* holding allows federal courts to defer to state evidentiary rules in

criminal trials and was meant to be confined to the facts and circumstances of that case.  *Id.*  The right to present a defense is violated only when exclusion of such evidence is "arbitrary or disproportionate to the purposes [the exclusionary rule applied is] designed to serve."  *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006) (internal citation and quotation marks omitted); *Michigan v. Lucas*, 500 U.S. 145, 151 (1991).  A defendant's due process right may be violated where the rule is applied "mechanistically to defeat the ends of justice," even if the exclusionary rule applied is itself constitutional, esteemed, and regularly applied.  *Chambers*, 410 U.S. at 302 (holding that where the excluded evidence bares "persuasive assurances of trustworthiness" and is "critical" to the defense, the exclusionary rule must yield to the defendant's constitutional right to present a defense); *see also Montana v. Egelhoff*, 518 U.S. 37, 52–53 (1996) (*Chambers* applied to evidentiary exclusions that are without "valid state justification").

Additionally, even if a defendant's constitutional right to present a defense is violated, habeas relief is warranted only if the error was likely to have had a "substantial and injurious effect" on the verdict.  *Brecht*, 507 U.S. at 637–38.

B.    **Background**

Petitioner contends that his constitutional rights under *Chambers* were violated when the trial court refused to admit Doe's hearsay statements to Savage.  Specifically, at trial, petitioner proffered Doe's hearsay statements through Savage:

> [Doe] was remorseful of the incident, preceding her explanation with something similar to "I don't like what I did . . . I put my husband in jail."  She then admitted that she "started it." . . . According to [Doe], her husband had been drinking, and he said something offensive.  She responded by grabbing a cane and striking him repeatedly over the head, following which "it was on."

(Dkt. No. 4 at 9.)  The trial court found the testimony to be unreliable and therefore inadmissible, and the Court of Appeal affirmed.[1]  In pertinent part, the Court of Appeal provides the facts and reasoning relevant to this issue:

---

[1]   At trial, petitioner proffered Doe's hearsay statements to both Savage and Kelly Graham. (*See* Dkt. No. 23-6 at 73–87 (trial transcripts); Dkt. No. 26-4 at 105–06 (trial transcripts); Dkt. No. 26-5 (trial court decision excluding hearsay statements); *see also* Dkt. No. 4 at 6–10 (proffered statements from Graham and Savage).)  Doe refused to testify and therefore was deemed unavailable.

Defendant contends the trial court erroneously excluded evidence of incriminating statements his wife made to Anne Savage. Days after being discharged from the hospital, in a phone conversation with Anne Savage, defendant's wife stated that she "started it" after defendant, who had been drinking, said something offensive, that she did not like what she had done, and that she put her husband in jail. Defendant argues that these statements were admissible as statements against his wife's penal interest and were crucial to his self-defense claim.

Evidence Code section 1230 provides that hearsay statements are admissible under the exception for declarations against penal interest. The party seeking to admit such evidence must show "that the declarant is unavailable, that the declaration was against the declarant's penal interest, and that the declaration was sufficiently reliable to warrant admission despite its hearsay character." (*People v. Cudjo* (1993) 6 Cal. 4th 585, 607.) "To determine whether the declaration passes the required threshold of trustworthiness, a trial court 'may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant.'" (*Ibid.*) Declarant's statements are not sufficiently reliable for admission simply "'*because* it incorporates an admission of criminal culpability.'" (*People v. Duarte*, 24 Cal. 4th 603, 611.)

The trial court excluded the proffered hearsay statements of defendant's wife to Anne Savage primarily on the ground that the statements were unreliable because of their inconsistency with other statements the wife had made. On two separate occasions the wife told police officers that defendant punched and kicked her and that, in response, she struck him in the head with a wooden cane. Defendant had also offered to prove that in a conversation with her friend Kelly Graham, the wife stated that defendant was intoxicated and belligerent, that after an exchange of words he pushed her and caused her to fall against a window sill, and that, as a response, she grabbed the cane and struck him over the head.

The court granted the prosecutor's motion to exclude these statements under Evidence Code sections 1230 and 352. The court explained its ruling as follows: "From the evidence before the court as presented by the proponent, this court finds that the offered statements that are attributed to Jane Doe through the testimony of Kelly Graham and Anne Savage do not meet the required criteria for their admission under the declarations against interest exception to the hearsay rule. The two statements offered by the defense conflict with one another. In the statement to Kelly Graham, Jane Doe allegedly asserts that Allen Williams pushed her, causing her to fall to the ground before she picked up a cane and struck defendant on the head. In the statement to Anne

6

Savage, Jane Doe purportedly picked up a cane and struck defendant repeatedly over the head with her cane; with no mention being made to her having been pushed. There are however certain similarities in each statement[], including that defendant had been drinking and was either belligerent or said something offensive to Jane Doe. [¶] This court has also made an analysis under Evidence Code § 352. The initial statements made by Jane Doe to the 9-1-1 dispatcher and responding paramedic were previously found to be sufficiently reliable to allow their admission into evidence. Jane Doe made other statements in addition to these which contradict the statements she purportedly made to Kelly Graham and Anne Savage. There is also question as to Jane Doe's motivation when these statements [were] made to the defense witnesses. At some point after Allen Williams' arrest, Jane Doe decided to stop cooperating with the prosecution and law enforcement and has refused to testify at trial."

"We review a challenge to a trial court's choice to admit or exclude evidence under section 352 for abuse of discretion." (*People v. Branch* (2001) 91 Cal.App.4th 274, 282.) A trial court's exercise of discretion under Evidence Code section 352 "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) Reversal is required only if it is reasonably probable that a result more favorable to defendant would have been reached had the excluded evidence been received. (*People v. Watson* (1956) 46 Cal.2d 818, 837.)

If the court's statement that the wife "decided to stop cooperating with the prosecution and law enforcement and has refused to testify at trial" was made in explanation of why the court considered the wife's statements not to be trustworthy, reliance on that factor was improper. When deciding if incriminating statements made by an unavailable witness are reliable, Evidence Code section 913, subdivision (a) states that "no presumption shall arise because of the exercise of the privilege [to not testify], and the trier of fact *may not* draw any inference therefrom as to the credibility of the witness or as to any matter at issue in the proceeding." (Italics added.) Nonetheless, reading the court's remarks in context, it is apparent that the court's conclusion that the necessary element of trustworthiness was lacking was not based exclusively or even primarily on this factor. As the trial court pointed out, the statements defendant's wife made to Anne Savage and Kelly Graham conflict with one another. In one version, the wife purportedly picked up a cane and struck defendant repeatedly over the head, initiating the physical confrontation. In the other version, which is consistent with her contemporaneous statements to the police and the paramedic, she struck the defendant after he began the confrontation by pushing

her to the ground.  Moreover, although the court could not properly rely on the wife's refusal to testify, it could properly note her expressed concern over causing her husband to be jailed in evaluating the reliability of her description of events.  Based on the totality of the evidence presented, there was no abuse of discretion in excluding the wife's hearsay statement that she started the fight, nor did the exclusion preclude defendant from presenting his defense.

*Williams*, 2014 WL 1465884, at *2–3.

### C.      Discussion

Under *Chambers*, a defendant's rights to present a defense are violated when the application of evidentiary rules bars testimony that "bore persuasive assurances of trustworthiness" and "was critical to [petitioner's] defense."  *Chambers*, 410 U.S. at 302.  Even if a constitutional error occurred pursuant to *Chambers*, reversal is warranted only if such error was not harmless.  *See Brecht*, 507 U.S. at 637.  The Court first addresses whether there was a violation under *Chambers*, and then whether any such violation was harmless.

#### 1.   *Chambers* Violation

##### a)      Assurances of Trustworthiness

Petitioner argues that the statements here were trustworthy and reliable because they were spontaneously made to a close friend shortly after the incident, and they were corroborated by Doe's statements to another friend, Graham, and by petitioner's injuries.  Additionally, petitioner stresses that the excluded hearsay statements were against Doe's penal interest thereby falling into a hearsay exception.

Petitioner relies primarily on the Supreme Court's decision in *Chambers* and the Ninth Circuit's decision in *Cudjo* in support of his argument that the statements made by Doe to Savage bore the requisite assurances of trustworthiness.  Both, however, are distinguishable from the case at hand and therefore do not persuade.  In *Chambers*, the defendant accused of murder called a witness, McDonald, who had previously confessed to the same murder.  *Chambers*, 410 U.S. at 294.  At trial, McDonald disavowed the confession while on the stand, and the defendant was thereafter barred from treating McDonald as an adverse witness pursuant to Mississippi's "voucher rule," which did not allow parties to impeach their own witnesses.  *Id*. at 295.

1    Additionally, the trial court refused to allow the defendant to introduce the testimony of three

2    individuals, each of whom would have testified that McDonald had confessed to them that he

3    committed the murder. *Id.* at 298. The Supreme Court held that McDonald's confessions bore

4    sufficient indicia of trustworthiness because they were "made spontaneously to a close

5    acquaintance shortly after the murder occurred," were each "corroborated by some other evidence

6    in the case," and "each confession [] was in a very real sense self-incriminatory and

7    unquestionably against interest." *Id.* at 300–01. Similarly, in *Cudjo*, the defense attempted to

8    offer hearsay testimony from a witness who had confessed to committing the murder to a close

9    friend shortly after the murder occurred. *Cudjo*, 698 F.3d at 754.

10          The statements at issue here do not bear the same indicia of reliability. First, unlike the

11    statements in *Chambers* and *Cudjo*, which were made shortly after the murders, the statements

12    from Doe to Savage were made after she was released from the hospital, approximately eight days

13    after the incident. (Dkt. No. 23-8 at 22.) Second, unlike the confession at issue in *Chambers*,

14    which was consistent across the three witnesses to whom McDonald allegedly confessed, Doe's

15    statements to Savage were inconsistent with her statements to another potential witness, Graham.

16    Whereas Doe's statements to Savage alleged that she started the confrontation, her statements to

17    Graham indicated that petitioner began the altercation. (*See* Dkt. 4 at 6 (Graham's statement

18    indicating that following "an exchange of words, [petitioner] pushed [Doe], causing her to fall

19    against a window seat" and in response, Doe grabbed a cane and struck petitioner in the head).)

20    Third, it was not unreasonable for the Court of Appeal to conclude that Doe may have had

21    motivation to lie to Savage regarding the incident. In both *Chambers* and *Cudjo*, neither of the

22    witnesses had an incentive to lie about committing the murders to exonerate the defendant. By

23    contrast, Doe herself expressed to Savage her concerns about causing petitioner, her husband, to

24    be placed in jail. (Dkt. No. 4 at 9.) Additionally, the gravity of the potential charges in *Chambers*

25    and *Cudjo* made it highly unlikely that the witnesses would lie about murdering someone given

26    the potential for lifetime incarceration. Here, the possible penalty for Doe hitting her husband

27

28

United States District Court
Northern District of California

1   with a cane was miniscule compared to the probable sentence for petitioner's third strike.[2]

2           On balance, the Court of Appeal's conclusion about the lack of trustworthiness of the

3   proffered hearsay statements and the resulting exclusion of those statements was not contrary to or

4   an unreasonable application of the clearly established rule presented in *Chambers*. *See Christian*

5   *v. Frank*, 595 F.3d 1076, 1084–86 (9th Cir. 2010), *cert. denied*, 562 U.S. 1007 (2010) (rejection of

6   purportedly exculpatory hearsay statement did not merit habeas relief where the evidence was less

7   reliable than the hearsay evidence in *Chambers*).  The Court of Appeal's determination that the

8   hearsay statements lacked the basic assurances of reliability because of their inconsistencies, the

9   surrounding circumstances, and the potential motivation of the declarant was not an unreasonable

10   application of the state evidentiary rule.  Therefore, the Court of Appeal's decision was not

11   contrary to, or an objectively unreasonable application of, any clearly established federal law as

12   determined by the United States Supreme Court in *Chambers*.  28 U.S.C. § 2254(d).

**b)      Critical to Petitioner's Defense**

14           The Court also finds relief unwarranted here on the additional ground that Doe's

15   statements to Savage were not critical to petitioner's defense.  Petitioner argues that the statements

16   at issue constituted the only evidence probative of mitigating petitioner's guilt as they showed that

17   Doe initiated the conflict and that petitioner was only acting in self-defense.  However, as

18   respondent argues, it does not appear that Doe's statements were critical to petitioner's defense.

19   First, testimony from the arresting officer described petitioner's injuries and informed the jury that

20   such injuries resulted from Doe hitting petitioner on the head with a cane.  (Dkt. No. 23-7 at 32–

---

22          [2]  Petitioner argues that the trial court misapplied California law in finding that Doe's
statements did not fall into the declarations against interest hearsay exception.  Such, however, is
23   not a ground for obtaining federal habeas relief.  *See* 28 U.S.C. § 2254(a) (establishing that a
district court may entertain an application for a writ of habeas corpus "only on the ground that
24   [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States").
In any event, for the reasons stated above, it was not unreasonable for the trial court or the Court
25   of Appeal to find that Doe's statements at issue did not fall under the hearsay exception.  Under
California law, a hearsay statement falls into the declarations against interest hearsay exception
26   where the "statement, when made, was so far contrary to the declarant's pecuniary or proprietary
interest, or so far subjected [her] to the risk of civil or criminal liability . . . that a reasonable
27   [woman] in [her] position would not have made the statement unless [s]he believed it to be true."
Cal. Evid. Code § 1230.  The Court of Appeal reasonably found that Doe could have had several
28   motivations for fabricating the story she provided Savage to protect petitioner.

33.)  Second, unlike in *Chambers* where the excluded statements, if true, would have exonerated the defendant, here, it was not unreasonable for the Court of Appeal to find that Doe's statements, even if admitted and believed to be true, would not have established a viable case for self-defense. (*See infra*.)

Accordingly, the Court finds that petitioner has failed to carry his burden of showing that the state court decision is an objectively unreasonable application of clearly established federal law.  *See Cullen*, 563 U.S. at 181.[3]

### 2. **Harmless Error**

Even assuming, *arguendo*, that the exclusion of Savage's testimony was a *Chambers* violation, habeas relief would still be inappropriate in this case because any such error would be harmless.  The Supreme Court has held that unless the error at issue "had substantial and injurious effect or influence in determining the jury's verdict," a trial court's constitutional error does not permit habeas relief.  *Brecht*, 507 U.S. at 637–38.  Under *Brecht*, a petitioner must show not just a "reasonable possibility" that the error affected the verdict, but that the error resulted in "actual prejudice."  *Id.* at 637–39 (holding that the error was harmless because the prosecution's "evidence of guilt was, if not overwhelming, certainly weighty.")

Here, petitioner argues that the excluded evidence was critical to his claim that he attacked Doe in self-defense.  Petitioner asserts that Savage's testimony provides evidence that Doe initiated the altercation.  Thus, petitioner argues, a jury could have determined that petitioner's reaction was not necessarily greater than what a reasonable person would deem necessary to ensure their safety given the circumstances.  With regards to this issue, the California Court of Appeal held:

> Even if there was any error in excluding the wife's statements, the error was harmless in light of the overwhelming evidence of defendant's guilt.  The undisputed evidence of the nature and

---

[3]  Petitioner also argues that it was error for the trial court to rely on the fact that Doe had stopped cooperating with the prosecution and law enforcement and refused to testify at trial in making its reliability determination.  However, the California Court of Appeal agreed that it was improper for the trial court to do so, but held that the trial court had sufficient other bases upon which to find Doe's statement to Savage unreliable.  As discussed above, the Court agrees.

gravity of his wife's injuries makes clear that even if the jury were to have believed that his wife initiated the confrontation, defendant's response went far beyond anything necessary to defend himself.

The right to self-defense extends only to the degree of force that a reasonable person would employ under similar circumstances. (*People v. Clark* (2011) 201 Cal.App.4th 235, 250.) Only force that a reasonable person similarly situated would deem necessary to insure their safety is permissible. (*Ibid.*) "For acts done in self-defense to remain lawful, the force that one uses must be only such as appears reasonably necessary, in view of the circumstances, to prevent the impending injury." (19 Cal.Jur.3d (2014) Criminal Law: Defenses, § 51.) "Thus, under a charge of assault with a deadly weapon, the probable danger of a lesser degree than great bodily injury will not justify the exercise of the right of self-defense." (*Ibid.*)

Here, even if the wife attacked defendant first and struck him three times in the back of the head with a cane, it is evident that defendant responded with significantly greater force than necessary. The wife was not wielding a knife or anything other than an apparently light-weight cane not likely to cause serious injury. The defendant could not reasonably have believed it was necessary, to ensure his own safety, to beat and kick his wife enough to break her jaw in three places, break seven of her ribs, knock teeth out, and bruise her in the eye, chest, and arm. Indeed, the futility of the self-defense defense in this case is highlighted by the evidence that when the police arrived at the scene, defendant spontaneously acknowledged, "I was wrong, I admit it" and "I was going to turn myself in."

*Williams*, 2014 WL 1465884, at *3–4.

Unlike in *Chambers* where the hearsay testimony was a confession from another person that he had committed the murder, *Chambers*, 410 U.S. at 298, the hearsay testimony here would only confirm that Doe hit petitioner with a cane, with the additional fact that she may have initiated the physical altercation, *Williams*, 2014 WL 1465884, at *2. It was not unreasonable for the Court of Appeal to find that, given the "nature and gravity" of Doe's injuries in comparison to petitioner's injuries, a jury would still find that petitioner's response was "beyond anything necessary to defend himself." *Williams*, 2014 WL 1465884, at *5–6 (explaining that in defending one's self, "[o]nly force that a reasonable person similarly situated would deem necessary to

1  insure their safety is permissible").[4]

2    Thus, even if the Court had found a constitutional violation, such violation would have

3  been harmless given the circumstances of this case.

4  **IV.**  **INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**

5    A.  **Legal Framework**

6    In order to establish IAC, petitioner must show both that:  (i) his counsel performed

7  deficiently and (ii) the deficient performance in fact prejudiced his defense.  *Strickland v.*

8  *Washington*, 466 U.S. 668, 687–88 (1984).  A reviewing court should deny an IAC claim if the

9  petitioner cannot adequately demonstrate either of the *Strickland* prongs.  *Id.* at 697 (courts are not

10  required to address both prongs of the test if the petitioner fails on one).

11    In establishing the first prong of *Strickland*, petitioner must show that his counsel's

12  performance was deficient, i.e., it fell below an "objective standard of reasonableness" under

13  predominant professional norms.  *Id.* at 687–88.  The reviewing court should treat counsel's

14  conduct with a strong presumption that the conduct is within the realm of reasonable professional

15  assistance.  *See id.* at 689.

16    In order to establish the second prong, petitioner must show counsel's deficient

17  performance prejudiced him, i.e., that "there is a reasonable probability that, but for counsel's

18  unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

19

20    [4] Petitioner additionally argues that the Court of Appeal's determination that it was

21  evident that petitioner responded with significantly greater force than necessary was based on
   erroneous factual assumptions lacking evidentiary basis. Specifically, petitioner takes issue with

22  the Court of Appeal's conclusion that Doe was not wielding "anything other than an apparently
   light-weight cane not likely to cause serious injury."  *Williams*, 2014 WL 1465884, at *2.  As

23  respondent indicates, however, one of the trial exhibits included a photograph of the wooden cane.
   (*See* Dkt. No. 23-7 at 49.)  Additionally, the Court of Appeal could have concluded, based on

24  petitioner's light injury in comparison to Doe's, that the wooden cane was "apparently light
   weight" and not "likely to cause serious injury."  Petitioner also argues that a jury could have

25  found petitioner justified in his use of force given Doe's and petitioner's similarity in weight.
   However, as respondent argues, the Court of Appeal could have determined that a jury would not

26  find it convincing that a man "over six feet tall weighing 220 pounds" was justified in using such
   force against a "five-foot five-inch, 62-year-old woman of 250 pounds (a weight suggesting

27  obesity rather than power) to that extent to ensure his safety." (Dkt. No. 27-1 at 23 (citing
   exhibits).)  *See Harrington*, 562 U.S. at 102 ("[A] habeas court must determine what arguments or

28  theories supported or . . . could have supported, the state court's decision.").

1   Petitioner must establish that counsel's errors were so severe as to dispossess the petitioner of a

2   fair trial and reliable verdict. *Id.* at 692. When a petitioner is challenging a conviction, the

3   pertinent question is "'whether there is a reasonable probability that, absent the errors, the

4   factfinder would have had a reasonable doubt respecting guilt.'" *Hinton v. Alabama*, 134 S. Ct.

5   1081, 1089 (2014) (quoting *Strickland*, 466 U.S. at 694). For petitioner to show prejudice due to

6   counsel's failure to file a motion, petitioner has to prove that (1) had his counsel filed the motion,

7   it is reasonably probable that motion would have been granted, and (2) had the motion been

8   granted, it is reasonably probable that the result of the trial would have been more favorable to

9   him. *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999).

10        For a federal court reviewing IAC claims in a habeas proceeding, the question "is not

11   whether a federal court believes the state court's determination" under *Strickland* "was incorrect[,]

12   but whether [that determination] was unreasonable—a substantially higher threshold." *Knowles v.*

13   *Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted). Under section 2254(d), a federal

14   habeas court reviewing *Strickland* claims should apply a decidedly deferential standard to state

15   court decisions. *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6

16   (2003)); *see also Cullen*, 563 U.S. at 202 (holding that a federal habeas court applies a "doubly

17   deferential" standard of review in analyzing IAC claims under section 2254). In examining a

18   habeas IAC claim, if petitioner cannot prove the deficient performance prong, a federal court does

19   not need to explore *Strickland*'s prejudice prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737

20   (9th Cir. 1998). Inversely, it is unnecessary for a federal habeas court to decide whether counsel's

21   performance was deficient before examining whether petitioner was prejudiced due to the

22   purported deficient performance of his counsel. *See Strickland*, 466 U.S. at 697; *Williams v.*

23   *Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (affirming the district court's refusal to

24   contemplate whether counsel deficiently performed after already deciding that petitioner could not

25   show prejudice).

26        The pronounced deference in Strickland for reviewing a defense counsel's effectiveness

27   provides state courts with more flexibility in reasonably applying the rule, consequently

28   "translat[ing] to a narrower range of decisions that are objectively unreasonable under AEDPA."

United States District Court
Northern District of California

14

1   *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541

2   U.S. 652, 664 (2004)).  Because the *Strickland* prejudice examination is comprehensive in itself,

3   there is no need for a habeas court to employ the harmless error review under *Brecht*.  *Brecht*, 507

4   U.S. at 637; *see also Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).

5       B.    **Discussion**

6          The Court addresses each of the IAC claims brought, namely, petitioner's counsel's failure

7   to:  (i) obtain admission of Doe's hearsay statements through Savage's testimony; (ii) move to

8   suppress police testimony and photographs of blood inside the house; and (iii) object to admission

9   of Doe's hearsay statements to the paramedic and 911-operator under the Confrontation Clause.

10         **1.  Failure to Obtain Admission of Hearsay Statements**

11          As previously discussed, the trial court denied the defense's request for admission of Doe's

12   hearsay statements through Savage as an exception based on a declaration against penal interest.

13   Alternatively, petitioner argues that his trial counsel should have sought admission for purposes of

14   impeachment under the inconsistent statements exception.  The California Court of Appeal agreed

15   that such performance was deficient.  *Williams*, 2014 WL 1465884, at *4.  However, the Court of

16   Appeal held that petitioner's IAC claim failed on this ground because any such error was

17   harmless.  *Id.*  Thus, the court reasoned:

18         "Evidence that would have been admitted to attack or support the
19   credibility of a hearsay declarant if he or she had actually testified
20   is admissible to attack or support the hearsay declaration."
      (Simons, Cal. Evidence Manual (2013 ed.) § 2:17; Evid. Code, §
21   1202.)  However, "the prosecution may not offer for their truth the
inconsistent statements of a declarant who does not testify at trial."
22   (*People v. Blacksher* (2011) 52 Cal.4th 769, 808.)  Defendant's
wife was a hearsay declarant.  The statements she made to the 9-1-
23   1 dispatcher and the paramedic were properly received in evidence.
(See subdivision c., post.)  The truth of these statements was
24   contradicted, at least in part, by her statements to Anne Savage.
Therefore, although the incriminating statements were
25   inadmissible under Evidence Code section 1230, they were
admissible under Evidence Code section 1202 for the limited
26   purpose of evaluating the truth of the hearsay statements that were
admitted.  Although deference must ordinarily be given to
27   counsel's tactical decisions, we can think of no possible strategic
reason for having failed to advance this alternative ground for the
28   admission of the statements to Anne Savage.  The admissibility of

            15

this evidence was considered outside the presence of the jury and it was unquestionably in defendant's interest to cast doubt on the credibility of what the wife told the officers and the paramedic.

Nonetheless, even if counsel was deficient in failing to seek admission of this evidence under Evidence Code section 1202, there was no prejudice. (See *In re Crew* (2011) 52 Cal.4th 126, 150 ["If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient."].) For the reasons discussed above, even on the assumption that consideration of this evidence for the limited permissible purpose would have caused the jury to doubt whether defendant was the original aggressor—a dubious assumption—the extent of the wife's injuries, coupled with defendant's spontaneous acknowledgement of guilt, leaves little room to believe that admission of this evidence would have affected the outcome of the trial.

*Id.*

For the reasons discussed above, and in light of the undisputed evidence indicating the injuries inflicted on Doe, it was not unreasonable for the California Court of Appeal to decide that there was no reasonable probability of Doe's statement to Savage changing the jury verdict. Therefore, the Court of Appeal did not contravene or unreasonably apply the standard for IAC set forth in *Strickland* in finding no prejudice due to defense counsel's deficient performance.

### 2. Failure to Move to Suppress Police Testimony and Photographs of Blood Inside the House

Petitioner next argues that his counsel's failure to suppress police testimony and photographs of blood inside the house was IAC. Specifically, petitioner argues that his counsel should have moved to exclude the testimony of Officer Manion and the introduction of photographs taken by Officer Manion based on his warrantless search of petitioner's house. With regards to this issue, the California Court of Appeal explained:

Defendant also contends his attorney's performance was deficient because he failed to move to suppress evidence obtained as a result of Officer Manion's warrantless entry into his home. Manion entered the home after placing defendant in handcuffs and before locating his wife. Manion testified to his observation of blood in the master bedroom and photographs of the bedroom were admitted into evidence. Defendant claims that a warrantless entry was not justified because there were no exigent circumstances and a protective sweep was not warranted.

Under the Fourth Amendment, searches and seizure inside a home

16

without a warrant are presumptively unconstitutional. (*Groh v. Ramirez* (2004) 540 U.S. 551, 552.) However, warrantless entries are allowed during exigent circumstances (*Minnesota v. Olson* (1990) 495 U.S. 91, 100), and for purposes of a limited protective sweep (*Maryland v. Buie* (1990) 494 U.S. 325, 335-337). Exigent circumstances are defined as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." (*People v. Ramey* (1976) 16 Cal.3d 263, 276.) When emergency situations arise, "[o]fficers do not need ironclad proof of a 'serious, life-threatening injury to invoke the emergency aid exception." (*Michigan v. Fisher* (2009) 558 U.S. 45, 49.) " '[A]n objectively reasonable basis for believing' [citation] that 'a person within [the house] is in need of immediate aid' " is sufficient. (*Id*. at p. 47.)

In the present case, defendant's wife had told the police dispatcher that she was hiding in her neighbor's backyard. When police officers arrived at the scene, Officer Manion spotted only the defendant on the porch of his home. The whereabouts of defendant's wife's was unknown, but the door to the home was open and defendant made an attempt to enter. Under the circumstances it was eminently reasonable, and responsive to the 9-1-1 emergency call for assistance, for the officer to determine whether the wife had returned to her home and was in immediate need of aid. Because a motion to suppress evidence of what was observed inside the home was doomed to fail (e.g., *Michigan v. Fisher*, *supra*, 558 U.S. 45), the attorney's failure to bring such a motion was neither a deficiency nor prejudicial.

*Williams*, 2014 WL 1465884, *4–5.

Under the Fourth Amendment, warrantless searches of a home are presumptively unconstitutional, however, that presumption may be overcome if exigent circumstances exist. *Michigan v. Fisher*, 558 U.S. 45, 47 (2009); *United States v. Alaimalo*, 313 F.3d 1188, 1192–93 (9th Cir. 2002). "[E]xigent circumstances are present when a reasonable person [would] believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Bailey v. Newland,* 263 F.3d 1022, 1033 (9th Cir. 2001) (internal quotations omitted); *Kentucky v. King*, 563 U.S. 462, 471–72 (2011) (exception to prevent destruction of evidence). The Fourth Amendment also permits police officers to enter a home without a search warrant to provide emergency aid to a wounded inhabitant or to defend an

17

1   inhabitant from impending harm.  *Fisher*, 558 U.S. at 45, 47.  This "emergency aid" exception

2   requires only that the officer had an "objectively reasonable" foundation for thinking that someone

3   in the house was in need of urgent care.  *Id.*

4           Here, when the officer reached petitioner's home, Doe had told the dispatcher that she was

5   in her neighbor's backyard.  *Williams*, 2014 WL 1465884, at *5.  However, when the officer

6   arrived, he saw petitioner on the front porch, and he was not certain as to the victim's location, as

7   it was not clear whether or not she remained in her neighbor's yard.  *Id.*

8           The officer's testimony on this issue is instructive:

9               Q:  What happened when you first arrived at 723 Cypress?
                A:  I noticed that the front door of the home was wide open.
10              Q:  Did you initially see anybody?
                A:  Not initially.
11              Q:  At some point, did you see someone at 723 Cypress?
                A:  Yes.
12              Q:  Can you describe who you saw?
13              A:  I saw Mr. Williams standing at the front porch.
                . . .
14              Q:  What was the defendant doing when you saw him standing at the
                porch?
15              A:  He was just standing there.
                Q:  What did you do?
16              A:  I asked him to come down to me.  He was standing on the sidewalk in
17              front of the house.
                Q:  What was his reaction or response when you asked him to come
18              toward you?
                A:  He turned around and started to walk inside the house.
19              Q:  What did you do?
                A:  I went in the front door and handcuffed him.   I didn't want him to go
20              into the house, have possible weapons, make the situation dangerous for
21              me and fellow officers.
                . . .
22              Q:  And at the time when you first saw the defendant standing on the
                porch, did you have any idea where the possible victim might be?
23              A:  Possibly in the back yard of the neighbor's house.
                Q:  But you weren't sure at that time?
24              A:  I did not know.

25  (Dkt. No. 23-7 at 29–31.)

26          Under these circumstances, it was not unreasonable for the Court of Appeal to find that the

27  officer had an "objectively reasonable basis for believing that a person within the house [was] in

28

18

need of immediate aid." *Fisher*, 558 U.S. at 47; *see also United States v. Black*, 482 F.3d 1035, 1039 (9th Cir. 2006) (finding search justified where police feared that victim *could* have been inside the apartment). Accordingly, the Court of Appeal's conclusion that it was not outside the scope of professional conduct for petitioner's trial counsel to decide not to bring a motion to suppress such evidence was also reasonable and subject to this Court's deference.

Additionally, it was not unreasonable for the Court of Appeal to find that counsel's failure to move for suppression did not prejudice petitioner. Even if petitioner's counsel had moved to suppress such evidence and succeeded, the prosecution also presented photographs and medical testimony of Doe's actual injuries. (*See* Dkt. No. 23-7 at 118–35.) As respondent argues, the "emotional impact that could have arisen from the photographs of the bedroom were already independently evoked by the photographs of the victim's face and body." (Dkt. No. 27-1 at 36.) Thus, there is no "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.

**3. Failure to Move to Suppress Hearsay Statements to Paramedic and 911 Operator**

Petitioner further argues that he received ineffective assistance of counsel due to defense counsel's failure to object to the admission of Doe's statements to the 911 operator and paramedic as a violation of the Sixth Amendment's Confrontation Clause. The California Court of Appeal rejected petitioner's argument:

> [D]efendant argues that his lawyer provided ineffective assistance in failing to object to the admission of the statements made by his wife in her 9-1-1call for help and to the attending paramedic, on the ground that these hearsay statements were testimonial and their admission violated his Sixth Amendment right to confrontation. (*Crawford v. Washington* (2004) 541 U.S. 36.) Defendant asserts that by the time his wife made the 9-1-1 call, the emergency had already ended, so that the operator's line of questioning ("what's going on?") had evolved into an interrogation in which she told the authorities that "her husband" "had beat [her] and kicked [her]." Likewise, defendant asserts that by the time the paramedic arrived the emergency was no longer in progress, so that when the paramedic asked his wife "if she was struck with any weapons or how she was struck," her response "that she had been kicked multiple times and all over her body" was testimonial in nature. Defendant relies on *Davis v. Washington* (2006) 547 U.S. 813, 822 to support his argument that statements become testimonial "when

the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  However, "a 911 call, and at least the initial questioning by the operator, are not primarily designed to prove some past fact, but to elicit current circumstances requiring police assistance."  (*People v. Cage* (2007) 40 Cal.4th 965, 982.)

Here, after the wife told the 9-1-1 dispatcher "I need help please," the dispatcher asked "what's going on" in order to determine if police assistance was needed.  Likewise, the paramedic was eliciting information in order to determine appropriate medical treatment.  At trial, the paramedic explained that it is general procedure to ask trauma patients a series of questions to ascertain if they are alert and oriented.  One of those questions is "if they know what happened to them."  The purpose of these questions is to "make sure that when they answer questions what they are saying is going to make sense."  If the responses do not make sense, the paramedics "wouldn't take what they are saying" and instead "go by what [they] see."  Additionally, these questions help paramedics "find out where the injures could be, and pretty much line up for the hospital so they can know what to expect, what areas to look at."  Thus, these questions and the wife's answers were made primarily to deal with an ongoing emergency situation.  The statements were not elicited to establish facts for use in a later criminal prosecution, and their admission was not a violation of defendant's Sixth Amendment rights as construed in *Crawford v. Washington, supra,* 541 U.S. 36 and its progeny.

Deference is ordinarily due to tactical decisions by defense counsel, including particularly decisions on whether to object to the introduction of evidence.  This decision is inherently tactical and seldom establishes a counsel's incompetence. (*People v. Roberts* (2011) 195 Cal.App.4th 1106; see generally, *Douglas v. Woodford* (2003) 316 F.3d 1079.)  In the present case, the failure to raise this meritless objection clearly was neither deficient nor prejudicial.

*Williams*, 2014 WL 1465884, at *5–6.

The Sixth Amendment's Confrontation Clause affords the accused in criminal cases the right to "be confronted with the witnesses against him."  U.S. Const. amend. VI.  The goal of the Confrontation Clause is to guarantee due process and the trustworthiness of evidence.  *Crawford v. Washington*, 541 U.S. 36, 61 (2004).  The clearly established Supreme Court precedent under *Crawford* demands that the reliability of evidence be tested by the adversarial process' hallmark of cross-examination.  *Id.*; *see also Davis v. Alaska*, 415 U.S. 308, 315–16 (1974).

1    The Confrontation Clause applies to all "testimonial" statements, whether made in court or

2    out of court. *Crawford*, 541 U.S. at 50–51. A statement is testimonial hearsay subject to the

3    Confrontation Clause when the main purpose of presenting the out-of-court statement is to create

4    an out-of court substitute for trial testimony. *Michigan v. Bryant*, 562 U.S. 344, 369 (2011); *see,*

5    *e.g.*, *Bullcoming v. New Mexico*, 564 U.S. 647, 655–59 (2011) (finding that a lab report prepared

6    in connection with a criminal investigation and certifying that petitioner's blood alcohol level was

7    above limit for aggravated DUI was testimonial); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305,

8    310, 329 (2009) (concluding a certificate from a crime lab analyst identifying a controlled

9    substance qualified as testimonial evidence because it was produced for the purpose of proving a

10   fact in trial and was basically identical to other in-court testimony).

11   Where an investigation or preparation for trial is not the primary purpose of garnering a

12   statement, "the admissibility of a statement is the concern of state and federal rules of evidence,

13   not the Confrontation Clause." *Bryant,* 562 U.S. at 358. The relative formality of the questioning,

14   or the lack thereof, may aid a court's inquiry as to its "primary purpose." *Id.* at 366. The primary

15   purpose of a statement is determined objectively. *United States v. Rojas-Pedroza*, 716 F.3d 1253,

16   1267 (9th Cir. 2013). Accordingly, "'the relevant inquiry is not the subjective or actual purpose of

17   the individuals involved in a particular encounter, but rather the purpose that reasonable

18   participants would have had, as ascertained from the individuals' statements and actions and the

19   circumstances in which the encounter occurred.'" *Id.* (quoting *Bryant*, 562 U.S. at 360).

20   "Statements are nontestimonial when made in the course of police interrogation under

21   circumstances objectively indicating that the primary purpose of the interrogation is to enable

22   police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822

23   (2006). Statements are testimonial "when the circumstances objectively indicate that there is no

24   such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove

25   past events potentially relevant to later criminal prosecution." *Id.* at 814, 822. Testimonial

26   hearsay statements are prohibited under the Confrontation Clause unless (1) the witnesses are

27   unavailable, and (2) the defendants had a prior opportunity to cross-examine the witnesses.

28   *Crawford*, 541 U.S. at 59.

United States District Court
Northern District of California

1    Here, the statements of concern involved, like *Davis*, a 911 call occurring in an ongoing

2   emergency:  Doe's request for medical help and rescue from the neighbor's backyard.  In *Davis*,

3   the Supreme Court held that the statements were not testimonial because the nature of "what was

4   asked and answered . . . was such that the elicited statements were necessary to be able to resolve

5   the present emergency."  *Davis*, 547 U.S. at 817, 827 (discussing that the operator asked "What's

6   going on?," "Are there any weapons?," and "What's his . . . name?," to which the victim answered

7   "He's jumpin' on me again," "No. He's usin' his fists," and "Davis . . . Adrian").  The questions

8   asked by the 911 operator in the instant matter are indistinguishable from those asked by the 911

9   operator in *Davis*.  (*See* Dkt. No. 23-5 at 42–43 (transcript of 911 call where operator asked Doe

10   what happened, whether her husband had any weapons, and what her husband's name was).

11   Petitioner attempts to distinguish *Davis* by arguing that here, Doe informed the 911 operator that

12   she had been attacked forty-five minutes prior to making the call.  However, in the same breath,

13   Doe also informed the operator that she had just been "able to slip away" from petitioner, which

14   could have implied that she remained in danger.  (Dkt. No. 23-5 at 42.)  Thus, it was not

15   unreasonable for the Court of Appeal to determine that the statements made to the 911 operator

16   were not testimonial and that therefore, defense counsel's failure to object was not deficient.

17    Petitioner's arguments with respect to Doe's statements to the paramedic are equally

18   unavailing.  Petitioner argues that the paramedic's questions went beyond what was necessary to

19   provide treatment but rather were intended to obtain information for a future prosecution.

20   Specifically, petitioner takes issue with the paramedic asking Doe what happened, how she

21   received her injuries, and whether she was struck with an open hand, closed hand, or kicked.

22   These questions, petitioner argues, were not necessary for Doe's diagnosis or treatment.  However,

23   at trial, the paramedic testified that such questions help them determine "where the injuries could

24   be, and pretty much line up for the hospital so they can know what to expect, what areas to look

25   at."  (Dkt. No. 23-15 at 12.)  The Ninth Circuit has held similar questioning from a physician to be

26   non-testimonial.  *See Moses v. Payne*, 555 F.3d 742, 748, 755 (9th Cir. 2008) (holding that state

27   court's determination that emergency room physician's questions about what happened to assault

28   victim was not testimonial was not an unreasonable application of *Crawford*).  Thus, it was also

*United States District Court*
*Northern District of California*

22

not unreasonable for the Court of Appeal to determine that Doe's statements to the paramedic were non-testimonial and that defense counsel's failure to object to such statements was not deficient. *Williams*, 2014 WL 1465884, at *5.

In any event, even if the Court were to find that counsel's performance with respect to this issue was deficient, it was not unreasonable for the Court of Appeal to find that petitioner was not prejudiced by any potential error. *Id.* As discussed above, the evidence of Doe's severe injuries, coupled with petitioner's admission of guilt would likely not have been outweighed or even compromised by the exclusion of the statements at issue here. Additionally, Doe's medical records and contemporaneous photographs amply document the extent of the injuries inflicted on Doe. Hence, no reasonable probability exists that the outcome of the trial would have been different if defense counsel had objected to the admission of the statements at issue here.

## V.   CONCLUSION

Accordingly, petitioner has not met his burden to show that he is in custody in violation of the Constitution or laws or treaties of the United States, and his petition is hereby **DENIED**. A certificate of appealability will not issue. Reasonable jurists would not "find the [Court's] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

Dated: October 26, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California